FILED

2022 Mar-02  PM 01:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **DEBORAH SUE BAKER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action Number |
| **v.** | ) | **6:20-cv-00946-AKK** |
| | ) | |
| **KILOLO KIJAKAZI, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### <u>MEMORANDUM OPINION</u>

Deborah Sue Baker brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act seeking review of the final adverse decision of the Commissioner of the Social Security Administration.  Doc. 1.  The court finds that the Administrative Law Judge's decision is supported by substantial evidence and that the Appeals Council did not err by denying Baker's request for review.  The court therefore affirms the decision denying benefits.

### I.

Baker applied for social security disability benefits based on total replacements of her right and left hips, a reattachment of her right Achilles tendon to her ankle, "four bulging discs in [her] lower back," a "fractured disc in [her] lower back," and "spinal column squeezing verve spinal stenosis."  R. 67.  Baker's

application was denied.  R. 76-77.  Baker appealed this denial and requested a
hearing before an ALJ.  R. 86-88.  Following the hearing, the ALJ issued a decision
affirming the denial of benefits.  R. 15-27.  Baker asked the Appeals Council to
review the ALJ's decision, but it denied this request, rendering the ALJ's decision
the final decision of the Commissioner.  R. 1-4.  Baker then filed this petition for
judicial review.  Doc. 1.

## II.

This court reviews the Commissioner's legal conclusions *de novo*, but the
Commissioner's "factual findings are conclusive if supported by substantial
evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C.
§ 405(g).  As such, this court "may not decide the facts anew, reweigh the evidence,
or substitute [its] judgment for that of the Commissioner." *Mitchell v. Comm'r, Soc.
Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (internal citation omitted).  Instead,
this court is tasked with "scrutiniz[ing] the record as a whole to determine" if the
ALJ's decision is "reasonable and supported by substantial evidence." *Martin*, 894
F.2d at 1529.  Substantial evidence refers to "such relevant evidence as a reasonable
person would accept as adequate to support a conclusion," *id.*, and the "threshold for
evidentiary sufficiency is not high," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154
(2019).

## III.

To qualify for supplemental social security benefits, a claimant must show that she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  A claimant's physical or mental impairments must be "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id*. § 1382c(a)(3)(B).

An ALJ conducts a five-step analysis to determine a claimant's eligibility for supplemental social security benefits:

> At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. At the second step, the ALJ must determine whether the impairment or combination of impairments for which the claimant allegedly suffers is "severe." At the third step, the ALJ must decide whether the claimant's severe impairments meet or medically equal a listed impairment. Where . . . the ALJ finds that the claimant's severe impairments do not meet or equal a listed impairment, the ALJ must then determine, at step four, whether she has the residual functional capacity ("RFC") to perform her past relevant work. . . . Finally, if the claimant cannot perform her past relevant work, the ALJ must then determine, at step five, whether the claimant's RFC permits her to perform other work that exists in the national economy.

*Adams v. Comm'r, Soc. Sec. Admin.,* 586 F. App'x 531, 533 (11th Cir. 2014) (internal citations omitted); *see also* 20 C.F.R. § 416.920(a).  To determine residual functional capacity, the ALJ must assess the claimant's "ability to do work despite her impairments."  *Adams*, 586 F. App'x at 533 (internal citations and alterations omitted).  At step five, the ALJ must then consider the claimant's RFC, along with her age, education, and work experience, to determine whether there are a significant number of jobs in the national economy that the claimant could perform.  20 C.F.R. § 416.920(g); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).  The ALJ will find the claimant disabled only where her impairments "prevent [her] from making an adjustment to any other work."  20 C.F.R. § 416.920(g).

## IV.

In performing the five-step sequential analysis, the ALJ found at step one that Baker had not engaged in substantial gainful activity since April 13, 2018, the disability onset date alleged in her application.  R. 20-21.  At step two, the ALJ found that Baker's "degenerative joint disease of the right ankle and shoulder, status-post replacement of the bilateral hips, degenerative disc disease, and obesity" are severe impairments which "significantly limit [her] ability to perform basic work activities."  R. 21.  The ALJ also found that Baker's "hypertension, hyperlipidemia[,] and occasional flares of diverticulitis" are non-severe impairments because "[t]hese

conditions are controlled with medications and have not prevented [Baker] from working." R. 21.

At step three, after considering Baker's impairments both individually and in combination, the ALJ found that Baker "does not have an impairment or combination of impairments that meets or medically equals" a listed impairment. R. 21. The ALJ determined that Baker's bilateral hip replacements and degenerative joint disease of her right ankle and shoulder do not meet the listing requirements for musculoskeletal disorders because they do not cause "gross anatomical deformity . . . and chronic joint pain and stiffness[,]" do not limit Baker's motion with the affected joints, and do not prevent Baker from ambulating or "perform[ing] fine and gross movements effectively." R. 21; *see* 20 C.F.R. Subpt. P, App'x 1, § 1.02. The ALJ also found that Baker's degenerative disc disease of her thoracic and lumbar spine does not meet the listing requirements for spinal disorders because it does not cause nerve root compression, consistently limit her spinal motion, or prevent her from ambulating effectively. R. 21; *see* 20 C.F.R. Subpt. P, App'x 1, § 1.04. Finally, the ALJ determined that Baker's obesity did not medically equal a listed disorder because there was no evidence that it resulted in "an inability to perform work-related activities." R. 21.

At step four, the ALJ determined that Baker "has the residual functional capacity to perform sedentary work . . . except that she can occasionally push, pull

and operate foot controls with [her] lower right extremity." R. 22. The ALJ found that Baker can "frequently handle and finger," "can occasionally climb ramps and stairs," "can occasionally balance, stoop, kneel, crouch and crawl," and "can tolerate occasional exposure to extreme cold and extreme heat." R. 22. The ALJ also noted, however, that Baker "should never climb ladders and scaffolds[,] . . . should avoid all exposure to hazards such as moving mechanical parts and unprotected heights, . . . [and] should avoid all exposure to vibration." R. 22. In making this determination, the ALJ discussed Baker's subjective complaints of pain, the limitations her impairments impose on her daily activities, and prior medical opinions and administrative medical findings. R. 22-25. Specifically, the ALJ observed that "[s]urgeries and medications have helped to control [Baker's] pain and have increased her level of functioning . . . [such] that she is capable of performing sedentary work activities." R. 25.

After finding that Baker could not perform her past work, the ALJ proceeded to step five, and, based on testimony from a vocational expert, determined that Baker's skills from her previous work would transfer to other jobs existing in significant numbers in the national economy – specifically, the jobs of attendance clerk and school secretary. R. 26-27, 55-56. In making this determination, the ALJ relied on the vocational expert's testimony that Baker's past work as a school media specialist "is so similar" to these jobs that she "would need to make very little, if

any, vocational adjustment in terms of tools, work processes, work settings, or the industry."  R. 26-27.

## V.

Baker contends that (1) the ALJ erred by failing to give proper weight to the opinion of her treating physician, (2) the Appeals Council erred by refusing to consider new evidence, and (3) the ALJ erred by failing to consider whether Baker suffers from a severe impairment under listing 1.15.  *See* doc. 17.

## A.

Baker challenges the ALJ's decision to discount the opinion of orthopedic surgeon Mark Prevost, and she contends that the ALJ should have given Dr. Prevost's opinion more weight because of his status as Baker's treating physician. *See* doc. 17 at 12-14.

### 1.

Dr. Prevost evaluated and treated Baker over the course of several months in 2019, including by performing back surgery on Baker in April 2019.  R. 23-24, 386-433.  Dr. Prevost wrote a letter, prior to Baker's surgery, opining that "due to [Baker's] significant back issues she is completely and totally disabled."  R. 433. Baker relies heavily on this letter in her brief, arguing that the ALJ erred by not accepting Dr. Prevost's conclusion that Baker was disabled and that the ALJ was

required to afford "substantial weight" to Dr. Prevost's opinion absent good cause to the contrary. *See* doc. 17 at 12-14.

These contentions are unavailing. To begin, the question of whether a claimant is disabled is reserved to the Commissioner. 20 C.F.R. § 404.1520b(c). Thus, a physician's statement that a claimant is "totally disabled" is "inherently neither valuable nor persuasive" on the issue of disability, and the ALJ is not required to "provide any analysis" on whether or how that opinion was considered. *Id*. The ALJ therefore did not err by declining to adopt Dr. Prevost's conclusion. R. 23-24.

Moreover, the regulations applicable to claims filed after March 2017 state that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).[1]   Instead, supportability – whether objective medical evidence and supporting explanations presented by a medical source support his findings – and consistency – whether a medical opinion or finding is consistent with evidence from other medical and nonmedical sources in the claim – are the most important factors

---

[1] Baker cites to 20 C.F.R. § 404.1527 and related caselaw for her contention that "[a]bsent 'good cause' to the contrary, the ALJ must give substantial weight to the opinion, diagnosis and medical evidence of a treating physician." But this regulation applies only to claims filed before March 27, 2017, and thus is not relevant to Baker's claims.

for the ALJ to consider.  20 C.F.R. § 416.920c(b-c).  The ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions" in the final determination of disability, but the ALJ is not required to articulate how he considered any other factors.  *Id.*

2.

Here, in determining that Baker could perform sedentary work and was not disabled, the ALJ analyzed Dr. Prevost's treatment records at length and in the context of other relevant evidence.  R. 22-25.  Specifically, the ALJ referenced Dr. Prevost's report – made after his "totally disabled" note and Baker's subsequent surgery – stating that Baker "was very pleased with the relief she received from the surgery" and that x-rays "showed excellent fusion."  R. 23.  Indeed, several months later, Baker "continued to be pleased with her relief" and Dr. Prevost instructed her to "increase activities as tolerated."  R. 23-24, 432.  Based on these positive developments, along with Dr. Prevost's report that Baker had normal strength and sensation in her back and lower extremities even before her surgery, R. 397, and another physician's similar report, R. 381-85, the ALJ found that Dr. Prevost's "totally disabled" opinion was not supported by his findings or consistent with other medical evidence.  R. 22-25.  The ALJ thus properly considered Dr. Prevost's opinion under the applicable regulations and did not err by declining to accord

substantial weight to Dr. Prevost's conclusion that Baker was "totally disabled."[2] Accordingly, the ALJ's finding is supported by substantial evidence.

**B.**

Following the ALJ's unfavorable decision, Baker sought Appeals Council review based on a newly-submitted letter from Dr. Prevost.  R. 13-14.  In this letter, Dr. Prevost wrote that "although [Baker] has improved with surgery[,]" she "still has significant pain" such that it "would be . . . impossible for her to do any type of work which would require 8 hour days or even a portion of that would be very difficult or impossible for her to do that due to her significant pain."  R. 13.  Dr. Prevost further opined that Baker "is totally disabled from her back."  R. 13.

The Appeals Council found that Dr. Prevost's letter, dated January 8, 2020, did "not affect the decision about whether [Baker was] disabled beginning on or before November 18, 2019," the date of the ALJ's decision, and thus declined to review the ALJ's determination.  R. 2.  Baker now contends that Appeals Council erred by failing to consider this letter, arguing that it "should have remanded the case to the ALJ."  Doc. 17 at 14-15.

---

[2] Baker also argues that the ALJ erred by failing to consider Dr. Prevost's diagnosis of "severe lumbar stenosis spondylosis spondylolisthesis scoliosis lateral listhesis state post large decompression fusion osteomies" as a severe impairment.  Doc. 17 at 15.  But the ALJ considered the lumbar stenosis impairments, *see* R. 21, and Baker does not cite to any caselaw or regulation suggesting that this particular diagnosis constitutes a severe impairment independent of Baker's numerous other spinal ailments that the ALJ discussed in his finding.  This argument, therefore, is also unavailing.

1.

The Appeals Council will review a case if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, *and* there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5) (emphasis added). New evidence is material if it creates a "reasonable possibility [] that [it] would change the administrative result," and it is "chronologically relevant if it relates to the period on or before the date of the ALJ's hearing decision." *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1309 (11th Cir. 2018) (internal citations omitted). Medical opinions pertaining to "treatment occurring after the date of the ALJ's decision may be chronologically relevant" where the opinion is informed by the claimant's medical records from that period. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1322 (11th Cir. 2015). But where an opinion is rendered based on a claimant's symptoms *after* the date of the ALJ's decision, the opinion is generally not considered chronologically relevant. *See Hargress*, 883 F.3d at 1309. And even if new medical evidence is chronologically relevant, the Appeals Council will decline review where "there is no reasonable possibility that the new evidence would change" the ALJ's decision, *id.* at 1310, or where the claimant fails to show good cause for not submitting the additional evidence prior to her hearing before the ALJ, 20 C.F.R. § 404.970(b).

2.

It is unclear from Dr. Prevost's letter whether his conclusions are related to symptoms or treatment post-dating November 18, 2019.  Regardless, however, Baker does not explain why she failed to submit follow-up documentation from Dr. Prevost before the ALJ issued his decision, and, more importantly, she fails to show a reasonable probability that the new evidence would have changed the ALJ's decision.  Dr. Prevost's letter relates chiefly to Baker's capacity to work and her disability status, which are both issues reserved for the Commissioner, and his letter is thus "inherently neither valuable nor persuasive."  *See* 20 C.F.R. § 404.1520b(c).  The ALJ is not required to consider these statements in determining whether Baker is disabled, *see id.*, and Baker has therefore failed to show that the Appeals Council erred by declining to remand her case to the ALJ for reconsideration.

## C.

Finally, Baker argues that the ALJ erred by failing to find that she meets the requirements for a severe impairment under listing 1.15.  *See* doc. 17 at 15.  But listing 1.15 does not apply to Baker's case.  The ALJ held Baker's hearing in October 2019, R. 31, and issued his decision the following month, R. 27.  On December 3, 2020 – over a year after the ALJ's decision – the Social Security Administration updated the listings for musculoskeletal disorders, including by adding listing 1.15.  *See* Revised Medical Criteria for Evaluating Musculoskeletal Disorders, 85 Fed.

Reg. 78,164 (Dec. 3, 2020).  These updated regulations did not take effect until April 2, 2021.  *Id.*  Thus, the ALJ did not err by failing to consider Baker's impairments under listing 1.15.

## VI.

In conclusion, substantial evidence supports the ALJ's finding that Baker is not disabled, and the Appeals Council did not err by declining to review the ALJ's determination.  The Commissioner's final decision is therefore due to be affirmed in a separate order in accordance with this Memorandum Opinion.

**DONE** the 2nd day of March, 2022.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE